UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MELANIE PATTERSON

VERSUS

GREENBRIER HOSPITAL, LLC

CIVIL ACTION

NO: 19-9234

SECTION: "A" (5)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 29)** filed by the defendant, Greenbrier Hospital, LLC. The plaintiff, Melanie Patterson, opposes the motion. The motion, submitted for consideration on March 18, 2020, is before the Court on the briefs without oral argument. For the reasons that follow, the motion for summary judgment is granted.

### I.      Background

Melanie Patterson was employed by Greenbrier Hospital, LLC in the Covington Behavioral Health Hospital, a psychiatric treatment center. Greenbrier hired her in July 2017, and she began work on August 14, 2017. She was hired to be the Infection Control Nurse at the facility. Infection control encompasses a wide array of divisions within the facility that could potentially create a risk of infection such as general cleanliness, hygiene, employee disease testing, and kitchen operations. (Rec. Doc. 29-5, Braly declaration ¶ 2). Patterson's duties included the development and modification of infection control policies, conducting surveillance of infections, evaluating lab reports, reviewing patient medical records, performing environmental surveillance hospital-wide every two months, compiling and analyzing surveillance of infections, investigating

possible outbreaks of infections, and providing infection control orientation to all employees. (Rec. Doc. 33-2, Patterson declaration ¶ 2).

Greenbrier terminated Patterson's employment on July 10, 2018, citing Patterson's inability to communicate in a tactful and respectful manner with fellow staff members thereby causing significant disruption to the day to day operations of the hospital. (Rec. Doc. 29-4 at 148, Corrective Action Form dated 7/10/18). The decision to terminate was made by Jennifer Braly, the Director of Human Resources, in consultation with CEO Wes Crawford and Billie Whittington, the Director of Risk Management. (Rec. Doc. 29-5, Braly declaration ¶ 3).

Patterson initiated this action in state court against Greenbrier alleging that her termination violated the Louisiana whistleblower statute (La. R.S. § 23:967), and that Greenbrier staff members defamed her after her termination. Patterson also asserted a claim for negligent infliction of emotional distress. Although Patterson did not include any claims based on federal law, Greenbrier removed the case based on diversity jurisdiction.

A jury trial was scheduled for April 6, 2020. After the Court had extended certain pretrial deadlines at the request of the parties, and prior to any concerns with COVID-19, the Court converted the pretrial conference to a status conference after receiving a letter from defense counsel; that letter pointed out that with the trial date fast-approaching the Court may not have sufficient time to consider Greenbrier's motion for summary judgment before trial preparation would have to begin in earnest. (Rec. Doc. 32, Order setting status conference). On March 18, 2020, the Court cancelled that status conference in light of General Order 20-2 pertaining to COVID-19 and formally

continued the trial. (Rec. Doc. 34, Order continuing trial). The deadline to file motions in limine remains stayed. (*Id.*).

Greenbrier now moves for summary judgment on all claims. Greenbrier contends that Patterson lacks evidence to establish essential elements for each of her claims. The Court addresses each argument in turn below.

II.   **Discussion**

***Summary Judgment Standards***

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### Analysis

### 1.    Reprisal Claim

Louisiana Revised Statute 23:967, referred to colloquially as the "whistleblower statute," is an anti-reprisal or anti-retaliation statute that provides in pertinent part: An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law, (1) discloses or threatens to disclose a workplace act or practice that is in violation of state law, (2) provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law, or (3) objects to or refuses to participate in an employment act or practice that is in violation of law. La. R.S. § 23:967(A).

The statute targets serious employer conduct that violates the law. *Causey v. Winn-Dixie Logistics, Inc.*, 186 So. 3d 185, 187 (La. App. 1st Cir. 2015) (citing *Fondren v. Greater New Orleans Exp. Comm'n,* 871 So. 2d 688, 691 (La. App. 5th Cir. 2004)). To prevail under the statute, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred is insufficient. *Id.* (citing *Accardo v. La. Health Servs. & Indem. Co.,* 943 So. 2d 381, 386 (La. App. 1st Cir. 2006)); *Hanna v. Shell*

Page 4 of 12

*Explor. & Prod., Inc.*, 234 So. 3d 179, 194-95 (La. App. 4th Cir. 2017) (citing *Hale v. Touro Infirm.*, 886 So. 2d 1210, 1215 (La. App. 4th Cir. 2004)); *Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 158 So. 3d 826 (La. 2015). Some courts have held that only a violation of a state statute will suffice, *see e.g., Hale*, 886 So. 2d at 1215; *Edmonds v. Smith*, No. 16-298, 2016 WL 4010979 (E. D. La.2016), but other courts have concluded that a violation of a state regulation will suffice, *see e.g., Norris v. Acadiana Concern for Aids Relief Educ. & Supp.*, 421 F. Supp. 3d 399 (W.D. La. 2019). It is clear on the face of the statute, however, that in order to recover the plaintiff must first advise the employer of the violation of law before making the disclosure. *Mabry v. Andrus*, 34 So. 3d 1075, 1081 (La. App. 2nd Cir. 2010)).

Patterson does not dispute Greenbrier's suggestion that Louisiana courts look to the familiar Title VII burden shifting framework when evaluating reprisal claims under Louisiana's whistleblower statute.[1] *See Smith v. AT&T Solns., Inc.*, 90 Fed. Appx. 719 (5th Cir. 2004) (unpublished); *Dobyns v. Univ. of La. Sys.*, 275 So. 3d 911, 926 (La. App. 1st Cir. 2019) (applying the burden shifting framework to a state law reprisal claim).[2]

---

[1] In fact, Patterson expressly relies on federal Title VII decisions when making her causation argument based on temporal proximity. (Rec. Doc. 33, Opposition at 6).

[2] The Title VII framework carries with it a but for causation standard applicable to claims of reprisal under federal law. *Strong v. Univ. Health. Sys., LLC*, 482 F.3d 802, 805 n.1 (5th Cir. 2007) (observing that the standards governing Title VII and Louisiana reprisal claims are materially indistinguishable). But the reasoning supporting the but for causation standard under federal law derives from statutory text that is not present in the Louisiana statute. *See Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (holding that but for causation applies to a Title VII retaliation claim based on statutory text). Therefore, in the absence of clear guidance from the Louisiana Supreme Court, this Court is reluctant to hold Patterson to the but for causation standard when deciding whether her case should survive summary judgment. But as will be apparent from the Court's analysis of the evidence submitted in conjunction with Greenbrier's motion for summary judgment, even under a more relaxed causation standard Patterson cannot avoid summary judgment.

Claims of reprisal based on pretext are subject to the well-known *McDonnell Douglas* test and its burden-shifting framework. *Strong*, 482 F.3d at 805 (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)). To start, the plaintiff must make a prima facie showing that her termination was retaliatory. *Id.* The elements of the prima facie case are 1) that the plaintiff engaged in protected activity, 2) that she was subjected to an adverse employment action, and 3) that a causal link existed between the protected activity and the adverse action. *Septimus*, 399 F.3d at 610.

If the plaintiff satisfies the prima facie showing then the burden then shifts to the defendant to state a legitimate, non-discriminatory reason for terminating the plaintiff. *Strong,* 482 F.3d at 805-06. The burden is one of production not of persuasion. *See Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). Finally, the burden shifts back to the plaintiff whose ultimate burden is to show pretext; that is, to prove by a preponderance of the evidence that the defendant fired her not for its stated reasons, but in retaliation for protected activity. *Strong,* 482 F.3d at 806.

The Court has carefully considered the record before it and is persuaded that Patterson's retaliation claim is both legally and factually flawed in numerous respects. In fact, the only element of the prima facie case that Patterson satisfies is the adverse employment action requirement.

First of all, the "protected activity" pertinent to a reprisal claim under La. R.S. § 23:967 is premised on the employer having committed an actual violation of state law. Courts have not consistently required a *statutory* violation and this should be comforting to Patterson who cannot identify any state statute that the litany of Greenbrier's alleged violations may have violated. It is insufficient as a matter of law if Greenbrier merely

violated its own policies. Patterson's approach, which is to provide an exhaustive list of criticisms of Greenbrier's operation and then declare that DHH policies have been violated—again without identifying the specific agency policy or the specific regulation at issue—is insufficient to carry her through the prima facie stage of her case. While this Court is willing to err on the side of concluding that an actual statute need not be involved, it may very well be that some policies or administrative regulations, even if violated, might not involve the kind of serious employer conduct sufficient to support a claim under § 23:967. Therefore, the Court has no basis to discern as a matter of law whether the conduct that Patterson reported to Greenbrier—which occurred pursuant to her job duties and took place on a weekly if not daily basis at staff meetings—violated the law.

And the allegedly incriminating pictures that Patterson attached to her unsigned declaration are not helpful to defeating summary judgment because they are undated and fail on their own to suggest that an actual violation of state law occurred. Again, the pictures are untethered to a specific state regulation or policy. In opposition to Greenbrier's well-supported motion for summary judgment it is obvious that Patterson responded with every criticism of Greenbrier that she could recall from her time employed there and left it to the Court to ferret out the ones that could support a reprisal claim. The Court has no duty to survey the record or an agency's administrative regulations and policies searching for either evidence or legal authority to support a non-movant's position.

Further, Patterson's approach to her reprisal claim is completely divorced from the statutory text of La. R.S. § 23:967. If Patterson relies on § 967(A)(1) for her claim,

then the "disclosure" required in that provision cannot be satisfied by the reports that she gave at the regular staff meetings. Because the statute requires that the disclosure in § 967(A)(1) occur *after* the employee advises the employer of the violation, this provision clearly envisions something more that what Patterson did as part of her normal job duties, *i.e.*, to report internally any problems or even violations that she found at Greenbrier. Patterson has no evidence that she engaged in the kind of protected activity that § 967(A)(1) requires. The same holds true with the protected activity identified in § 967(A)(2).

Patterson's claim therefore devolves upon § 967(A)(3), which does not require any type of secondary disclosure but rather requires only that the employee object or refuse to participate in an employment act or practice that is in violation of law. Patterson's position is that by reporting her findings to Greenbrier, which again occurred on a nearly daily basis as part of her normal job duties, she was objecting to or refusing to participate in the violations that she reported to management. But again, Patterson has made no showing that any of the findings that she reported rose to the level of being a violation of the law.

Nonetheless, out of an abundance of caution, the Court will assume that somewhere in the bevy of criticisms that Patterson raises against Greenbrier lies serious employer conduct that violates the law, and that as to this specific employer conduct Patterson refused to participate in it, thereby constituting "protected activity" for purposes of her anti-retaliation prima facie case under § 967(A)(3). But even if the Court assumes that Patterson engaged in protected activity, Patterson falls woefully short of presenting a prima facie case of causation, *i.e.*, that a causal link existed between the

protected activity and the adverse action. Patterson's causation theory is premised entirely on the concept of temporal proximity but she provides no timeframe to establish that any protected activity, much less protected activity associated with a specific violation of state law, occurred in close proximity to her firing. According to Patterson, she reported alleged violations almost daily to Greenbrier's management during staff meetings. When she actually engaged in objecting to or refusing to participate in an employment act or practice that is in violation of law, *i.e.*, the specific type of protected activity upon which her retaliation claim is based, is not clear from the evidence. Patterson has not connected any protected activity to the July 10, 2018 termination in particular so the concept of temporal proximity does not help her case.

Nonetheless, out of an abundance of caution, the Court will assume that Patterson has managed to present a prima face case of retaliation under state law. But Patterson's case fails anyway because she has not impugned Greenbrier's proffered non-discriminatory reason for terminating her—that she was terminated for being disrespectful and unprofessional in her interactions with the other staff members—and she has not created an issue of fact as to an unlawful motive for terminating her. The question is not whether Patterson was objectively disrespectful and unprofessional to the staff—Patterson clearly contests this point even though in her deposition she conceded conflicts with some co-workers and knew that other staff members considered her to be too aggressive—but rather whether Greenbrier terminated Patterson in retaliation for refusing to participate in violations of state law. Patterson offers no evidence whatsoever to create an issue of fact as to retaliatory motive or as to

pretext.[3] In fact, an internal email dated May 4, 2018, which was well before Patterson was terminated, referred to Patterson's "abrasive approach," and discussed how Patterson's interaction with other staff members was problematic. (Rec. Doc. 29-4 at 147, Whittington email). Patterson might dispute whether she was actually "coached" or "counseled" as described in the email but that does not impugn what the email represents: objective evidence that Greenbrier's management had concerns about Patterson's attitude for some time before she was actually fired.

Of course, the most elucidating evidence regarding Patterson's inability to avoid summary judgment on her retaliation claim was her deposition testimony. When asked at her deposition what she believed to be the real reason that Greenbrier terminated her, Patterson was certain that her former supervisor Linda Silcox—someone who played no role in the decision to fire her—had been scheming to get rid of her for some time. (Rec. Doc. 29-4, Patterson deposition at 123). Patterson believed that Silcox knew that Patterson knew how unprofessional she was and that Silcox had been involved in a relationship with another co-worker at the facility as a means to wield power at the facility. (*Id.* at 130). Patterson confirmed that she believed that she was terminated because Silcox had been trying to get rid of her because Patterson was identifying, as part of her own job, things that Silcox was doing wrong. (*Id.* at 129).

---

[3] Moreover, because Patterson is not claiming that she was fired for disclosing Greenbrier's alleged violations to anyone outside of Greenbrier—in fact, Patterson disputes that the statute requires external disclosure at all (Rec. Doc. 33, Opposition at 5)—Patterson ignores that her entire retaliation theory is premised on the rather implausible suggestion that Greenbrier fired her for performing the very job duties that Greenbrier hired her to do, *i.e.*, find potential problems and report them to management.

Patterson clearly had issues with Silcox, who she believed had been scheming to get her fired for some time, but Patterson failed to connect that in any way to the reasons given for her termination. Even if Jennifer Braly, who terminated Patterson after consulting with the management team, had been completely duped by Silcox into believing that Patterson had acted disrespectfully toward other members of the staff—and to be clear, there is no evidence that Braly or Greenbrier's management was duped by anyone—that would not give rise to an inference that Braly was acting with a retaliatory motive when terminating Patterson.

Simply, Patterson has not produced any evidence to create an issue of fact on the question of whether her objection to or refusal to participate in a violation of state law—assuming that one occurred—had anything to do with the decision to terminate her employment. Greenbrier is entitled to judgment as a matter of law on Patterson's reprisal claim under the Louisiana whistleblower statute.

### 2. *Defamation*

Patterson did not address this claim in her opposition. For the reasons argued by Greenbrier in its motion for summary judgment, Greenbrier is entitled to judgment as a matter of law on Patterson's defamation claim.[4]

---

[4] To be clear, the Court is not suggesting that the defamation claim might have survived summary judgment if it had been addressed in Patterson's opposition. Having read the excerpts of Patterson's deposition that were provided with Greenbrier's motion for summary judgment, it is obvious that Patterson had no good faith, legitimate argument to make in defense of the defamation claim.

### 3. *Negligent Infliction of Emotional Distress*

Patterson did not address this claim in her opposition. For the reasons argued by Greenbrier in its motion for summary judgment, Greenbrier is entitled to judgment as a matter of law on Patterson's negligent infliction of emotional distress claim.[5]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 29)** filed by the defendant, Greenbrier Hospital, LLC, is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

April 27, 2020

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[5] To be clear, the Court is not suggesting that the negligent infliction of emotional distress claim might have survived summary judgment if it had been addressed in Patterson's opposition. Having read the excerpts of Patterson's deposition that were provided with Greenbrier's motion for summary judgment, it is obvious that Patterson had no good faith, legitimate argument to make in defense of the negligent infliction of emotional distress claim.